CLEVELAND J. MARCEL, SR., Judge Pro Tern.
This appeal originates in the Twenty-Ninth Judicial District Court, Division E, Parish of St. Charles, wherein the Honorable Joel T. Chaisson rendered judgment dismissing plaintiffs personal injury claim. We affirm.
Shell Oil Company performs a certain amount of its maintenance, repair and reconstruction work at its refinery in Norco, Louisiana, with independent contractors. In an area known as the GO-1 unit, Shell undertook in 1980 to remove, repair and replace three large vessels known as TLX Exchangers which were part of a furnace unit designated F-131.
Several contractors worked this job. Gaffney, Inc., plaintiffs employer, employed pipe fitters and welders. Delta Maintenance, Inc. employed boilermakers and iron workers. Scaffolding Rental and Erection Services, Inc. (hereinafter Scaffolding) employed carpenters who erected, maintained and revised the necessary scaffolding or decking.
These TLX Exchangers are large, round vessels running perpendicular to the ground. On level five of the GO-1 unit, the steel grating immediately surrounding each vessel was initially removed by Delta Maintenance. Once the necessary grating was removed, Scaffolding would deck over the open area. However, it was necessary that a small gap be left on either side of each vessel. This was to insure proper clearance for swinging as the vessel was removed by crane operations. After each vessel was removed, Scaffolding would then board over the entire area so that a consistent decking or platform surface would result.
After the exchangers were repaired, they were reinstalled one at a time. A portion of the board decking would be removed so that the exchangers could be reinstalled in their original positions. However, once *590 reinstalled, there was a wider gap than before because the exchangers were reinstalled without their insulation wrapping.
Plaintiff, Henry Gomez, was employed by Gaffney, Inc. as a pipe fitter. He and Willis Reed, a welder, were assigned by their foreman, Melvin Larson, to perform certain work on level five of F-131.
On December 30, 1980, an exchanger was reinstalled in the immediate area where they were working. Noticing the gap, plaintiff reported the hazard to his foreman, who in turn contacted Scaffolding who responded by boarding in the hole. Plaintiff remained on level five and watched the Scaffolding crew work; and, when the decking was completed, resumed work.
On the following morning, December 31, 1980, plaintiff and Reed were instructed to finish the work they had begun on a particular exchanger the day before. When they were finished, Larson reassigned them to an exchanger on the opposite side of F-131. It was then that plaintiff observed essentially the same type of gap around this exchanger and so informed his foreman, as he had done the day before. At Larson’s instruction, he and Reed then sat in a construction shack for about an hour until Larson returned and told them it was fixed and to go back to work.
Plaintiff, accompanied by Reed, returned to the work site whereupon he observed a “fire cloth” draped over the area where the opening had been. Plaintiff stepped on the “fire cloth” and fell into the opening. Reed, upon hearing plaintiff yell, turned and rushed over to remove plaintiff from the opening.
Plaintiff filed suit against Scaffolding and their liability insurer, Zurich Insurance Company, alleging negligence and want of due care on the part of Scaffolding for failure to properly place scaffold boards over the area and, instead, covering the open hole with fire cloth, thereby setting a trap for plaintiff. After a lengthy trial and a parade of witnesses, the trial court found that plaintiff had failed to prove his case by a preponderance of the evidence. Plaintiff then filed a motion for new trial and, after hearing argument, such motion was denied.
Plaintiff has appealed and asserts the following specifications of error:
that (1) the trial court erred in finding plaintiff had failed to prove his case by a preponderance of the evidence; that
(2) the trial court incorrectly failed to apply the provisions of LSA-R.S. 40:1672; and that
(3) the trial court incorrectly failed to apply the industry standard for construction of scaffolding found in 29 CFR 1926.-451(4) and 26 CFR 1926.451(5). Appellee answered seeking a reduction in their share of the costs.
All errors raised by appellant can be reduced to a single question, that is whether or not the trial court was clearly wrong (manifestly erroneous) as to the finding of no liability on the part of defendant-appel-lee.
At trial, everyone including plaintiff was preoccupied with finding and proving who placed the fire cloth over the hole. At the motion for a new trial, however, plaintiff attempted to argue that defendant was negligent in failing to place a guard rail around the gap.
Now, on appeal, appellant does not dispute the essential findings of the trial court, but rather continues his argument first advanced at through the motion for new trial — the negligence of defendant in failing to place a guard rail around the gap.
Appellant has cited the applicable state law regarding scaffolding and handrails to be LSA-R.S. 40:1672[1] and 1673[2]. How *591 ever, we find these statutes inapplicable to the facts of this case as the requirements of LSA-R.S. 40:1671[3] have not been satisfied.
Even if, for argument sake, we were to consider such statutes applicable, we would conclude that the trial court was not clearly wrong in holding defendant not negligent by mere failure to place guard rails around the open area. LSA-R.S. 40:1673 requires guard rails only where it is practical. In denying plaintiffs motion for new trial, the trial court observed that “pipe [was] going in and pipe [was] going back.” The gap was necessary to allow for the swing of the vessel as it was being first removed, then replaced. The nature of the job itself proved that handrails around the open area would have been impractical.
Appellant additionally argues that, when defendant subsequently bidded to do more work at Shell, they bound themselves by a letter dated November 23, 1976 to do that work in accordance with 29 CFR 1926.-451(4).[4] This OSHA standard requires that guard rails be installed on all open ends and sides of platforms more than ten feet above the ground. While plaintiff was working on a platform more than ten feet above the ground, the injury causing hole was neither an open end or side of that platform. We, therefore, find this regulation not applicable under these facts.
Appellant’s complaint and argument that the trial court incorrectly held that plaintiff did not prove his case by a preponderance of the evidence does not sway our opinion that the trial court’s ruling was sound. We too have wrestled long with this case, as did the trial court, but the conclusion that plaintiff failed to preponderate the evidence necessary to prove his case is inescapable.
Plaintiff attempted to have liability placed upon the defendant based solely on Melvin Larson’s testimony. Larson, the plaintiff’s foreman, testified that, on the morning of the accident, he requested defendant to board over the open area. Larson’s testimony was that he made his request directly with defendant’s foreman and that it was this man who later returned and told him the job was done. However, Larson could not name the defendant’s foreman nor could he identify him. All that Larson could recall was that he spoke to a white man.
Wayne Cavanaugh, employed by defendant as carpenter foreman, was the only foreman for defendant on this particular job. He contradicted Larson’s testimony when he testified that he was not requested to do any work on that job site on the day of the accident. Defendant’s time sheets bear witness to Cavanaugh’s testimony.
The work on F-131 in the GO-1 was designated by Shell with the job number 24942. Defendant’s time sheets clearly show that crews employed by defendant performed work on the day of the accident at seventeen other job sites at various loca *592 tions throughout the Shell complex, but that no work was performed on job # 24942 at F-131, GO-1. These time sheets were signed not only by defendant’s foreman and superintendent, but also by Shell supervisory personnel. The work performed on job # 24942 by defendant’s crew the day before the accident and witnessed by plaintiff is well documented and accounted for in the time sheets. We agree with the trial court and do not believe that any work was performed by defendant on that job site on the day of the accident.
Appellant would, additionally, have this court believe that defendant was solely responsible for the placement of fire cloths at various job sites and that, since he fell through an opening draped with a fire cloth, defendant must be liable. However, considering the testimony of defendant’s five fact witnesses, we are in agreement with the trial court that, “the proof was totally lacking with respect to the hole where the accident actually happened.” The judgment appealed from is not clearly wrong. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
Considering the discretion given the court in assessing costs, we cannot say that the assessment complained of by appellees constitutes abuse of such discretion. LSA-C.C.P. art. 1920.
Accordingly, for the foregoing reasons, the judgment appealed is affirmed with the costs of this appeal to be shared equally by all parties.
AFFIRMED.

. § 1672. Scaffolds, supports, or other mechanical contrivances
All scaffolds, hoist cranes, stays, ladders, supports, or other mechanical contrivances erected by any person for use in the erection, repairing, alteration, removing, or painting of any building, bridge, viaduct, or other structure shall be constructed, placed, and operated so as to give proper and adequate protection to any person employed or engaged *591 thereon or passing under or by it, and in such a manner as to prevent the falling of any material that may be used or deposited thereon.

.§ 1673. Safety rails for scaffolding or staging
In the construction or in the repairing, alteration, or removal of any structures, any scaffolding or staging, swung or suspended from any overhead support and more than twenty feet from the ground or floor, shall have, where practicable, a safety rail properly bolted, secured, and braced and rising at least thirty-four inches above the floor or main portion of the scaffolding or staging and extending along the entire outside length and along the ends thereof. Also, such scaffolding or staging shall be so fastened as to prevent it from swaying from the building or structure.

. § 1671. Application of Part
The provisions of this Part apply only in cities of more than fifteen thousand inhabitants.

. (4) Guardrails and toeboards shall be installed on all open sides and ends of platforms more than 10 feet above the ground or floor, except needle beam scaffolds and floats (see paragraphs (p) and (w) of this section). Scaffolds 4 feet to 10 feet in height, having a minimum horizontal dimension in either direction of less than 45 inches, shall have standard guardrails installed on all open sides and ends of the platform.